IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| LEONARD EUGENE BRADLEY, | ) | |
| | ) | |
|     Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FREIGHTCAR ROANOKE, LLC | ) | |
|     Serve: CT Corporation System, | ) | |
|         Registered Agent | ) | |
|         4701 Cox Road, Suite 285 | ) | Civil Action No. 7:18cv433 |
|         Glen Allen, VA 23060 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| FREIGHTCAR AMERICA, INC. | ) | JURY TRIAL DEMAND |
|     Serve: James Meyer, | ) | |
|         Chief Executive Officer | ) | |
|         2 North Riverside Plaza, | ) | |
|         Ste. 1300 | ) | |
|         Chicago, IL 60606 | ) | |
| | ) | |
|     Defendants. | ) | |

## COMPLAINT

COMES NOW, Plaintiff Leonard Eugene Bradley, by counsel, and states as his complaint against Defendants FreightCar Roanoke, LLC, and its corporate parent, FreightCar America, Inc., the following:

### I. Jurisdiction and Venue

1. This action arises under federal law, to-wit, the Americans with Disability Act, as amended, codified at 42 U.S.C. §§ 12101 *et seq.* and the Family and Medical Leave Act, as amended, codified at 29 U.S.C. §§ 2601 *et seq.*

1

2. Accordingly, the Court has jurisdiction pursuant to 28 U.S.C. § 1331, and has jurisdiction over all related state law claims, pursuant to 28 U.S.C. § 1367, as the same nucleus of operative facts that constitute Mr. Bradley's federal claims encompass his state law claims.

3. FreightCar Roanoke, LLC (FCR) is a limited liability company organized under the laws of the State of Delaware, with a principal place of business in Roanoke, Virginia.

4. FreightCar America, Inc. (FCA) is a corporation organized under the laws of the State of Delaware, with a principal place of business in Chicago, Illinois. FreightCar America derives significant revenue from its business ventures in Virginia, including through FCR, thereby availing itself of the laws of Virginia and subjecting it to personal jurisdiction before this Court. *See* Va. Code Ann. 8.01-328.1(A)(1).

5. Venue is proper in this Court, as a substantial portion of the acts and/or omissions that give rise to Mr. Bradley's claims occurred within the Western District of Virginia, namely in or around Roanoke, Virginia. *See* 28 U.S.C. § 1391(b)(2).

6. Mr. Leonard received a Right to Sue notice from the Equal Employment Opportunity Commission, with respect to his Americans with Disability Act claims, and brings this action within ninety (90) days thereof. *See* Notice of Right to Sue, a true and accurate copy of which is attached as **EXHIBIT A**.

## II. Facts

7. Mr. Bradley began his employment with FCR on or about March 21, 2015 as a Welder.

8. At all times relevant to this Complaint, Mr. Bradley met the legitimate business expectations of FCR and always received positive work performance evaluations.

9. Mr. Bradley is a qualified individual with a disability. Specifically, Mr. Bradley suffers from gallbladder disease.

10. Mr. Bradley's disability causes Mr. Bradley to experience painful stones and inflammation in his gallbladder and bile duct system, leading to vomiting and nausea. Mr. Bradley's disability affects major life activities, such as walking, standing, and ambulating, and affects major bodily systems, such as the digestive system.

11. Mr. Bradley was able to perform the essential functions of his job with or without an accommodation.

### Mr. Bradley Reveals His Disability
### And Requests An Accommodation of Unpaid Leave/FMLA

12. On or about November 1, 2016, Mr. Bradley revealed his disability to FCR Human Resources Manager Nancy Overton. Mr. Bradley simultaneously requested leave pursuant to the FMLA.

13. FCR considered Mr. Bradley to be disabled.

14. Upon information and belief, Ms. Overton held a discriminatory animus towards Mr. Bradley due to his disability and/or his requested use of FMLA leave.

15. Ms. Overton humiliated Mr. Bradley and treated him in a degrading manner upon requesting FMLA leave and for having a disability.

16. Ms. Overton accused Mr. Bradley and his mother of being "illiterate" when they had questions concerning the completion of FCR's required FMLA paperwork.

17. Further, Ms. Overton accused Mr. Bradley of not having a "legitimate" disability, stating, "I've got people here with cancer – there's no way you're as sick as you claim."

18. Mr. Bradley ultimately completed his FMLA paperwork, was approved for three weeks of continual leave in order to have surgery, and took his approved leave.

19. Upon his return from FMLA leave, Mr. Bradley was approved for intermittent FMLA leave for symptoms related to his disability/severe health condition.

**Mr. Bradley Experiences Complications Due to Disability |
Terminated After Taking FMLA Leave**

20. On or about February 23, 2017, Mr. Bradley experienced a flare-up of symptoms related to his disability.

21. Mr. Bradley, or a familial representative with express authority, called the FCR "FMLA Call Out" hotline to inform FCR of his intent to use his approved intermittent FMLA leave that day.

22. On or about February 28, 2017, Mr. Bradley experienced another flare-up of symptoms related to his disability. Mr. Bradley informed his supervisor, Lynn Tatum, of his intent to use FMLA leave.

23. On or about March 1, 2017, Mr. Bradley was summoned to a meeting with Ms. Overton and Mr. Tatum. Mr. Bradley was informed that he was being terminated for "habitual" and "unexcused" absences. At all times relevant to this Complaint, Mr. Bradley communicated his use of FMLA leave through the proper channels, as designated by FCR.

24. Mr. Bradley consistently used his FMLA leave for his disability/severe medical condition for proper purposes. His absences were not habitual, in so far as any negative connotation associated with the word "habitual."

25. Mr. Bradley consistently followed all rules, policies and directives regarding FMLA leave at FCR to the extent that if FCR had likewise followed same, then he would not have been subject to termination.

26. Defendants utilized a "point-based" system to track absenteeism. At the time of his termination, Defendants maintained that Plaintiff had exceeded the requisite

threshold to require termination. However, if Defendants had approved of Mr. Bradley's dutifully requested FMLA leave, he would not have had sufficient "points" to warrant termination.

### Mr. Bradley Applies For A Welder Position | Denied Employment Due To Disability And/Or Use Of FMLA Leave

27. In the Spring and Summer of 2018, FCR actively solicited applicants for welder positions.

28. On or about May 31, 2018, Mr. Bradley applied for a welder position at FCR in response to an advertisement.

29. Mr. Bradley was denied an interview despite a lack of disciplinary history during his employment with FCR and was not hired.

30. Again, on or about July 19, 2018, Mr. Bradley applied for a welder position at FCR in response to an advertisement.

31. Mr. Bradley was denied an interview connected with his July of 2018 application despite a lack of disciplinary history during his employment with FCR and was not hired.

32. Mr. Bradley was qualified for the position of welder, in which he applied for in May and July of 2018, due to his training as a welder and as evidenced by his previous employment as a welder at FCR.

33. Upon information and belief, Mr. Bradley was denied employment/FCR failed to hire Mr. Bradley due to his previous use of FMLA leave and/or FCR held a discriminatory animus toward his disability.

34. Any reasons offered by FCR for Mr. Bradley's unlawful termination and/or FCR's failure to hire Mr. Bradley are pretextual.

35. Any acts or omissions by Ms. Overton and Mr. Tatum were taken within the scope and course of their employment, giving rise to liability for FCR through the doctrine of *repondeat superior*.

36. Upon information and belief, FCA has direct control over the operations of FCR and knew, or should have known, about the acts and/or omissions of Ms. Overton and Mr. Tatum. Further, FCA failed to take any remedial action for violations of the ADA and FMLA.

37. Upon information and belief, FCA administered such control over FCR and therefore, Mr. Bradley, that FCA and FCR are both employers of Mr. Bradley pursuant to the FMLA and ADA.

### III. Counts

#### Count I
#### Discrimination and Retaliation in Violation of the ADA

38. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

39. Plaintiff, at all times relevant, was a qualified individual with a disability under the ADA.

40. Specifically, Plaintiff suffered from gallbladder disease – a recognized disability pursuant to the ADA.

41. Plaintiff's disability impairs several of his daily life activities, including sleeping, working, completing bodily functions, digestion, walking, and standing.

42. In the alternative, Plaintiff was regarded by Defendant as having such impairments.

43. At all times relevant to the Complaint, Plaintiff could perform the essential functions of his employment with Defendant with or without an accommodation.

44. Prior to Plaintiff's unlawful termination from employment, he was performing his work at a satisfactory level and meeting or exceeding Defendant's legitimate business expectations.

45. Prior to his termination from employment, Plaintiff revealed his disability to Defendant and requested related reasonable accommodations, including unpaid leave from work to treat and manage his disability/serious medical conditions.

46. Defendant discriminated and retaliated against Plaintiff by terminating his employment shortly after Plaintiff requested and received disability-related unpaid medical leave.

47. Defendant would not have terminated Plaintiff, failed to hire Plaintiff, or taken the other discriminatory and retaliatory actions against him but for Plaintiff's disability and/or his request for reasonable accommodations.

48. Any reasons provided by Defendant regarding Plaintiff's termination from employment were pretextual.

49. Indeed, Plaintiff's termination from employment and Defendant's failure to hire Plaintiff occurred under circumstances that raise a reasonable inference of unlawful discrimination and retaliation based upon Plaintiff's disability and/or requests for accommodation.

50. As a direct and proximate result of Defendant's actions, Plaintiff has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

51. At all times material hereto, Defendant engaged in discriminatory and/or retaliatory practices with malice or reckless indifference to the federally protected rights of Plaintiff so as to support an award of punitive damages.

52. The above-described acts by Defendant and employees of Defendant constitute disability discrimination and retaliation in violation of the Americans with Disability Act, as codified under Title 42 U.S.C. §§ 12101 *et seq.*, and the ADA Amendments Act of 2008 ("ADA").

## Count II
## Failure to Accommodate in Violation of the ADA

53. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

54. Plaintiff, at all times relevant, was a qualified individual with a disability under the ADA.

55. Specifically, Plaintiff suffered from gallbladder disease – a recognized disability pursuant to the ADA.

56. Plaintiff's disability impaired several of his daily life activities, including sleeping, working, completing bodily functions, digestion, walking, and standing.

57. In the alternative, Plaintiff was regarded by Defendants as having such impairments.

58. At all times relevant to the Complaint, Plaintiff could perform the essential functions of his employment with Defendants with or without an accommodation.

59. Plaintiff revealed his disability to Defendants and requested related reasonable accommodations, including unpaid leave from work to treat and manage his disability/serious health conditions.

60. Prior to Plaintiff's requests for disability accommodations, he was performing his work at a satisfactory level and meeting or exceeding Defendants' legitimate business expectations.

61. Defendants failed to properly accommodate Plaintiff's disability by failing to adequately engage in a continued dialogue with Plaintiff regarding how the Defendants could accommodate his disability. Instead, the Defendants terminated Plaintiff's employment and falsely accused him of "habitual" and "unexcused" absences.

62. Defendants would not have failed to accommodate Plaintiff's reasonable accommodation requests nor would have terminated Plaintiff, but for Plaintiff's disability and/or need for reasonable accommodations.

63. Indeed, Plaintiff's termination from employment and Defendants' failure to hire Plaintiff occurred under circumstances that raise a reasonable inference of unlawful failure to accommodate based upon Plaintiff's disability or request and/or need for a reasonable accommodation.

64. As a direct and proximate result of Defendants' actions, Plaintiff has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

65. At all times material hereto, Defendants engaged in unlawful and/or discriminatory practices with malice or reckless indifference to the federally protected rights of Plaintiff so as to support an award of punitive damages.

66. The above-described acts by Defendants and employees of Defendants constitute failure to accommodate in violation of the Americans with Disability Act, as codified under Title 42 U.S.C. §§ 12101 *et seq.*, and the ADA Amendments Act of 2008 ("ADA").

# Count III[1]
# Failure to Hire (Discrimination)
# in Violation of the ADA

67. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

68. On or about May of 2018, Plaintiff applied for the position of welder with Defendants in response to Defendants' advertisement.

69. Plaintiff, despite being qualified for the position of welder as evidenced by his past employment with Defendants, did not receive an interview, and consequently, was not hired.

70. On or about July 19, 2018, Plaintiff applied for the position of welder for a second time with Defendants in response to Defendants' advertisement.

71. Plaintiff, despite being qualified for the position of welder as evidenced by his past employment with Defendants, did not receive an interview, and consequently, was not hired.

72. Plaintiff would have been hired for the position of welder with Defendants but for Defendants' discriminatory animus towards Plaintiff's disability/serious health condition.

73. As a direct and proximate result of Defendant's actions, Plaintiff has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

---

[1] To the extent necessary, Plaintiff will submit a secondary EEOC Charge on Defendants' failure to hire him. The EEOC could not have known this information as the failure to hire took place at or after the EEOC closed its investigation and issued a Notice of Right to Sue. Plaintiff hereby provides notice that after exhaustion of administrative remedies, he shall seek amendment of this Complaint in accordance with the allegations set forth herein.

74. At all times material hereto, Defendants engaged in unlawful and/or discriminatory practices with malice or reckless indifference to the federally protected rights of Plaintiff so as to support an award of punitive damages.

75. The above-described acts by Defendants and employees of Defendants constitute failure to accommodate in violation of the Americans with Disability Act, as codified under Title 42 U.S.C. §§ 12101 *et seq.*, and the ADA Amendments Act of 2008 ("ADA").

### Count IV
### Discrimination and Retaliation
### in Violation of the FMLA

76. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

77. At all times relevant, Defendants were: (1) engaged in commerce and/or in an industry affecting commerce; and (2) an employer of fifty (50) or more employees for each working day during each of twenty (20) or calendar workweeks in the current or preceding calendar year.

78. Plaintiff worked for Defendants for approximately two (2) years and worked more than 1,250 hours during the twelve (12) month period immediately preceding his termination.

79. Plaintiff properly notified Defendants of his serious health conditions/disability and his need for FMLA-qualifying leave, to which he was entitled.

80. Defendants discriminated against Plaintiff by holding a discriminatory and retaliatory animus against him, based upon his requests for, and use of, federally protected FMLA leave.

81. Upon information and belief, Defendants discriminated against Plaintiff because of his serious health condition/disability and use of FMLA leave, treated him differently,

and less favorably, than similarly situated employees not exercising FMLA rights, terminated Plaintiff's employment, failed to hire Plaintiff, and questioned the "severity" of Plaintiff's disability/serious health condition in direct retaliation for Plaintiff's use of FMLA leave.

82. As a direct and proximate result of Defendants' actions, Plaintiff has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

83. Defendants would not have terminated Plaintiff's employment, failed to hire Plaintiff, or taken other discriminatory and retaliatory actions against him but for Plaintiff's requests for, and use of, FMLA leave.

84. At all times material hereto, Defendants engaged in unlawful or discriminatory practices with malice or reckless indifference to the federally protected rights of Plaintiff so as to support an award of liquidated damages.

85. The above-described acts by Defendants and employees of Defendants constitute unlawful discrimination and/or retaliation in violation of the Family Medical Leave Act, as codified under Title 29 of the United States Code §§ 2601 *et seq.* ("FMLA").

## Count V
## Interference with FMLA Rights

86. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

87. Defendants are: (1) engaged in commerce and/or in an industry affecting commerce; and (2) an employer of fifty (50) or more employees for each working day during each of twenty (20) or calendar workweeks in the current or preceding calendar year.

88. Plaintiff worked for Defendants for approximately two (2) years and worked more than 1,250 hours during the twelve (12) month period immediately preceding his termination.

89. Plaintiff properly notified Defendants of his disability/serious health conditions and his need for FMLA-qualifying leave, to which he was entitled.

90. Defendants interfered with Plaintiff's use of FMLA leave by treating him differently, and less favorably than, similarly situated employees not exercising FMLA rights, resulting in Plaintiff's termination from employment, and impeding Plaintiff's exercise of his FMLA rights.

91. Further, Defendants questioned the "severity" of Plaintiff's serious health condition/disability in an attempt to dissuade and/or interfere with Plaintiff's exercise of his FMLA rights.

92. Defendants' interference with Plaintiff's FMLA rights prejudiced Plaintiff in that he lost compensation and benefits, sustained other monetary losses, and suffered the loss of his employment as a direct result of Defendants' violation.

93. As a direct and proximate result of Defendants' actions, Plaintiff has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary loss.

94. At all times material hereto, Defendants engaged in unlawful or discriminatory practices with malice or reckless indifference to the federally protected rights of Plaintiff so as to support an award of liquidated damages.

95. The above-described acts by Defendants and employees of Defendants constitute unlawful interference with Plaintiff's rights in violation of the Family Medical Leave Act, as codified under Title 29 of the United States Code §§ 2601 *et seq.* ("FMLA").

## Count VI
## Failure to Hire (Discrimination)
## in Violation of the FMLA

96. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

97. On or about May of 2018, Plaintiff applied for the position of welder with Defendants in response to Defendants' advertisement.

98. Plaintiff, despite being qualified for the position of welder as evidenced by his past employment with Defendants, did not receive an interview, and consequently, was not hired.

99. On or about July 19, 2018, Plaintiff applied for the position of welder for a second time with Defendants in response to Defendants' advertisement.

100. Plaintiff, despite being qualified for the position of welder as evidenced by his past employment with Defendants, did not receive an interview, and consequently, was not hired.

101. Plaintiff would have been hired for the position of welder with Defendants but for Defendants' discriminatory animus towards Plaintiff's disability/serious health condition and/or Plaintiff's use of FMLA leave during his employment with Defendants.

102. As a direct and proximate result of Defendants' actions, Plaintiff has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary loss.

103. At all times material hereto, Defendants engaged in unlawful or discriminatory practices with malice or reckless indifference to the federally protected rights of Plaintiff so as to support an award of liquidated damages.

104. The above-described acts by Defendants and employees of Defendants constitute unlawful interference with Plaintiff's rights in violation of the Family Medical Leave Act, as codified under Title 29 of the United States Code §§ 2601 *et seq*. ("FMLA").

## Count VII
## Intentional Infliction of Emotional Distress

105. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

106. At all times relevant, through its agents and representatives, Defendants acted intentionally and/or recklessly regarding the treatment of Plaintiff.

107. The conduct of Defendants was both extreme and outrageous.

108. Due to the acts and/or omissions of Defendants, Plaintiff has suffered severe emotional distress and related physical health issues.

109. Due to the actions of Defendants, Plaintiff has suffered and experienced an increase in worry, fatigue, loss of appetite, nausea, weight loss, increased severity to his disability/serious health condition, insomnia, reduced self-esteem and self-confidence, and other health issues.

110. Due to the actions of Defendants, Plaintiff has suffered and will continue to suffer grievous emotional distress. Plaintiff has suffered loss of employment, past and ongoing financial injury, severe emotional distress, and other injury.

111. Defendants intentionally inflicted emotional distress upon Plaintiff.

## Count VIII
## Negligent Infliction of Emotional Distress

112. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

113. At all times relevant, through its agents and representatives, Defendants had a duty not to act with such reckless disregard as to cause Plaintiff harm.

114. The conduct by Defendants was both extreme and outrageous.

115. Due to the acts and/or omissions of Defendants, Plaintiff has suffered severe emotional distress and related physical health issues.

116. Due to the actions of Defendants, Plaintiff has suffered and experienced an increase in worry, fatigue, loss of appetite, nausea, weight loss, reduced self-esteem and self-confidence, and other health issues.

117. It was entirely foreseeable that the acts and/or omissions of Defendants in its treatment of Plaintiff would result in great emotional harm.

118. Defendants' treatment of Plaintiff directly and proximately caused his severe emotional distress and physical harm.

119. Defendants negligently inflicted emotional distress upon Plaintiff.

WHEREFORE, Plaintiff Leonard Eugene Bradley prays for judgment against Defendants FreightCar Roanoke, LLC and FreightCar America, Inc. for equitable relief, compensatory, liquidated damages, and punitive damages, together with prejudgment interest, and for costs and attorneys' fees, and for such other and further relief as may be just and equitable.

TRIAL BY JURY IS DEMANDED.

Respectfully Submitted,

**LEONARD EUGENE BRADLEY**

By: /s/ Thomas E. Strelka
Thomas E. Strelka, Esq. (VSB# 75488)
L. Leigh R. Strelka, Esq. (VSB # 73355)
N. Winston West, IV, Esq. (VSB # 92598)
STRELKA LAW OFFICE, PC
Warehouse Row
119 Norfolk Avenue, S.W., Suite 330
Roanoke, VA 24011
Tel: 540-283-0802
thomas@strelkalaw.com
leigh@strelkalaw.com
winston@strelkalaw.com

*Counsel for Plaintiff*